IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JENNIFER L. CONANT CHAMBERS,

                    Plaintiff,

      v.

ANDREW M. SAUL,
Commissioner of Social Security,

                  Defendant.

OPINION AND ORDER

19-cv-780-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Jennifer L. Chambers is seeking review of a final decision denying her applications for disability insurance benefits and supplemental security income under the Social Security Act.  42 U.S.C. § 405(g).  The administrative law judge hearing her case found that although plaintiff had severe physical and mental impairments, they did not amount to a disability, whether considered separately or together.  On appeal, plaintiff is proceeding only on her claim that her mental impairments are disabling.

       Plaintiff contends that the administrative law judge erred in two major respects:  (1) failing to appreciate the severity of plaintiff's mental impairments; and (2) discounting opinions in the record from the doctors and case workers who have worked with plaintiff. Instead, plaintiff says, the administrative law judge relied on her own conclusions about plaintiff's condition, looking only for evidence that would support a finding that plaintiff is not disabled.  I find plaintiff's contentions unpersuasive, for the reasons set forth below.

The following facts are drawn from the administrative record (AR).

# BACKGROUND

Plaintiff Jennifer Chambers was born in September 1988.  She claims to have been disabled by several mental impairments since her alleged disability onset date of January 6, 2015, when she was 26.  After her applications for disability were denied initially and on reconsideration, she asked for a hearing before an administrative law judge and was given one on August 3, 2018.  The administrative law judge later issued a written decision finding that plaintiff was not disabled.  AR 214-31.

## A. Plaintiff's Relevant Mental History

Plaintiff has a history of having suicidal thoughts and has seen doctors, social workers and physician associates on many occasions over the years.  A sampling of those visits follows.

In May 2012, when plaintiff was 23, she was admitted voluntarily to the Gundersen Lutheran Medical Center on referral from an emergency room in Tomah, Wisconsin, because of suicidal thoughts.  AR 946. She stayed at the center for three days of a voluntary inpatient stay and was given a diagnosis of depressive disorder, not otherwise specified, and post traumatic stress disorder.  She was released with an improved mood and a plan to go to outpatient followup.  AR 946-47.

More than a year later, in July 2013, plaintiff was admitted to the Gundersen medical

center again, because she had worsening depression.  She was given diagnosis of major depression, recurrent, and post traumatic stress disorder, with Cluster B Traits.  ("Cluster B personality disorders are characterized by dramatic, overly emotional or unpredictable thinking or behavior.  They include antisocial personality disorder, borderline personality disorder, histrionic personality disorder and narcissistic personality disorder." www.mayoclinic.org-symptoms-causes-syc-2034453.)  According to plaintiff's discharge notes, her mother had taken it upon herself to come to plaintiff's place of work and take her to the emergency room in Tomah.  When no bed was available there, plaintiff promised to report back to the hospital if she experienced any increase in suicidal thoughts.  AR 959.  The next day, at the urging of her counselor, she agreed to be admitted to the Gundersen medical center because she was still having suicidal thoughts.  AR 960.  She was assessed as having depressed mood and anxiousness, but no paranoid, suicidal or homicidal ideation.  AR 964.

In February 2015, plaintiff reported to a physician assistant that she had had worsening symptoms of depression, but she was stable on the medications she was taking and she identified no risk factors for suicide.  AR 799-800.  She cited positive factors in her life:  having a job, having responsibility for children and having a supportive family or friends.  Id.  She was prescribed Xanax for panic attacks, as needed.  Id.

When plaintiff saw the physician assistant the next month, she reported severe depression, panic disorder and generalized anxiety disorder.  AR 794.  Her medications were adjusted and she was told to keep her appointment with her counselor in two weeks, get out

of the house at least once a day and walk for 30-60 minutes.  Id.  Over the next months, her mood and her anxiety fluctuated.  In April 2015, she had a 50-minute session with social worker Amanda Kalisz, during which she reported little anxiety or depression and said she was working to put herself in social situations "to work on her skills.  AR 781.  In an August 2015 function report, she said she developed migraines frequently when she was under stress, that she had trouble sleeping, and if she did sleep, she had nightmares from which she woke in a cold sweat.  AR 594.

In a telemedicine therapy session on November 17, 2015, plaintiff acknowledged worsening anxiety over an incident involving her young daughter, but declined a suggested increase in her anxiety medication, saying she believed she could manage with therapy and she wanted to taper off the medication.  AR 900.  On December 14, 2015, she told Amanda Kalisz that she had had some suicidal thoughts, which had scared her, and she and her social worker discussed "safety planning" and ways that she had protected herself in the past when she had had similar thoughts.  AR 999-1000.  In December 2015, her treating psychiatrist, Laurie Polubinsky, found that plaintiff's speech and thought patterns were normal; she had no suicidal or homicidal ideation; and she had good judgment and insight.  AR 1270.

In March 2016, plaintiff continued to experience symptoms of anxiety and depression.  AR 980.  In April 2016, Kalisz referred her to  psychologist Ethan Everett, who administered the Continuous Performance Test, and described her as having feelings of depression and anxiety, as well as symptoms resulting from repeated abuse as a child.  AR 990-91.  Plaintiff's results on the test were within the normal range on all indices, which

4

indicated to Dr. Everett that she had "no apparent problems with focusing her attention, sustaining focus or problems with impulsivity." AR 990. He found also that plaintiff had a lack of ego development and strength. Id. On the Millon clinical multiaxial inventory, plaintiff showed a strong need for attention and reassurance and fear of separation from "those who provide support." Id. Dr. Everett's diagnostic impression was that plaintiff had post traumatic stress disorder, depression and anxiety. Id. He recommended counseling to help develop her coping skills and her sense of who she is.

In August 2016, plaintiff told her social worker her mood was okay, her concentration and appetite were good, her energy was fair and her anxiety went up and down. She denied any suicidal ideation. AR 1153.

In March 2017, a physician assistant found that plaintiff did not have thoughts of being better off dead or hurting herself and that, although she was experiencing a depressive episode at the time, her anxiety was stable on her current medication. AR 1352. Plaintiff saw therapists frequently and met with a physician every three months for management of her medications. AR 1483.

In July 2017, plaintiff told a physician assistant that she felt depressed, but described the depression as moderate, without panic attacks or worsening anxiety. AR 1418-22. In August 2017, she reported thoughts of self-harm and reported that she had had an increase in her depression. In addition, she had had encounters with both the local sheriff and a crisis worker, but had not been admitted to a hospital. AR 1436-37. Instead, she entered into a verbal contract with a physician assistant, agreeing to report immediately to the emergency

room if she had any thoughts of harming herself or others.  AR 1436.  Earlier in the week, she had found herself with thoughts of being better off dead or harming herself and had a paring knife in her hand.  AR 1438.  She admitted having had thoughts of suicide and actually thinking about how she might kill herself.  Id.

In October 2017, in a session with  licensed marriage and family therapist Katerri Dippen-Castillo, plaintiff expressed concern about actions her partner was taking.  AR 1466. She appeared anxious and in need of taking deep breaths between words or sentences.  Id. The therapist found her thought process to be within normal limits; she had no suicidal or homicidal ideation or hallucination; she was fully oriented to person, place and date; her thoughts were well organized; and she displayed no psychosis.  Id.

## B. Administrative Hearing.

At her hearing before the administrative law judge, plaintiff testified that she had been born in 1988, had a high school education and had started a program for veterinary technician certification but could not afford to continue after one quarter.  AR 247.  She has worked in manufacturing jobs, as a cashier, as a sales associate at Walmart and Goodwill, as a cleaner and as a housekeeper. AR 248.  She held a full-time job at Mecca Sportswear for two months before having to take leave for a variety of medical problems.  When she returned, she felt both anxious and depressed and developed thoughts of self-harm and had to have her mother come to pick her up from work.  AR 249.  It does not appear that she ever went back to that job.  She worked for about a year at a training program at Fort

McCoy, doing janitorial work for 30-40 hours a week.  AR 251-52.  At the time of the hearing, plaintiff had returned to Mecca Sportswear in a training program, AR 256, and was working about 16 hours a week.  AR 271.

Plaintiff has two children: a daughter, who was 9 in 2018, and a son who was 1 in that year.  Her daughter receives some special education help.  At that time, plaintiff and her children live with her mother, stepfather and a brother, although she was looking for another place.  Plaintiff said that she read to her children and took them outside to play.  AR 266.  She enjoys Facebook and find that at times, looking at it will reduce her stress to some extent.  AR 265.

Plaintiff has had experiences, including molestaton, rape and stalking, that make it hard for her to go to church or even shopping.  AR 273-74.  Her psychiatrist, Dr. James Lean, prescribes her medicines, and she sees her therapist, Amanda Kalisz, as often as once a week.  AR 267.  She has trouble sleeping and concentrating when her depression is bad.  AR 269.  She also experiences migraines frequently.  AR 275.

At plaintiff's hearing, a vocational expert testified that an employer will not usually tolerate an employee who is off task more than 10 percent during the workday, particularly if the off task time is not spread throughout the day.  AR 279-80.  Moreover, an employer will probably not tolerate an employee who is absent from work more than once a month.  AR 279-80.

## C. Administrative Law Judge's Evaluation

In reaching her conclusion that plaintiff was not disabled, the administrative law judge traced the five-step sequential evaluation of disability set out in the regulations.  20 C.F.R. § 416.920.  At step one, she found that plaintiff had not engaged in any substantial gainful activity since applying for disability status.  AR217.  At steps two and three, she found that plaintiff had the severe mental impairments of depression, anxiety, post traumatic stress disorder and personality disorder, but none of these impairments met or equaled the severity of a listed impairment.  Id.  (These impairments encompassed the various diagnoses of mental problems identified by the various professionals who had worked with plaintiff. Id.)  The administrative law judge also found that plaintiff had only mild limitation in understanding, remembering or applying information, moderate limitation in both interacting with others and concentrating, persisting or maintaining pace and no limitation in adapting or managing herself.  AR 218-19.  She found also that plaintiff had a severe mental impairment but that it was not disabling in and of itself.

On the question of interacting with others, plaintiff reported having difficulty being around others, particularly men, and having panic attacks and increased anxiety in public. However, the administrative law judge noted that plaintiff took part in activities requiring her to be out of her house, such as driving her children to school or to a public swimming pool, grocery shopping, attending medical appointments and spending time with others, including family members and friends.  AR 219.  Also, plaintiff did not avoid all men; she has been married, she shared custody of her children with their fathers and the medical

records showed she had the "ability to engage in appropriate social interaction." Id., citing AR 674.

With respect to plaintiff's moderate limitation in concentrating, persisting and maintaining pace, the record showed that plaintiff drove, managed her finances, prepared meals, read and cared for her young children. Id. The persons who have examined her mental functioning have not reported that she failed to cooperate with the testing or that she had difficulty completing the examinations; rather, they said that she generally presented with intact memory, attention and concentration. Id., citing, e.g., 772, 900.

At step four, the administrative law judge found that plaintiff had the residual functional capacity to perform medium work, as defined in 20 C.F.R. § 494,1567(c) and § 416.967(c), although she could engage in only simple and routine tasks in a low stress work environment with infrequent changes in work routine. She added that plaintiff should have only occasional interaction with coworkers and supervisors and no more than incidental interaction with the public. At steps four and five, the administrative law judge concluded that, given plaintiff's age, education, work experience and residual functional capacity, she could perform jobs that exist in significant numbers in the national economy, such as industrial cleaner, laundry laborer and stuffer. (The Dictionary of Occupations Titles defines "stuffer" as "bulk sausage stuffing machine operator.") AR 229.

The administrative law judge considered the opinions of the two state agency psychologists who reviewed plaintiff's mental residual functional capacity. In September 2015, Dr. Beth Jennings, Ph.D., acknowledged that plaintiff's current diagnosis from her

psychiatrist was "recurrent episode, moderate, unspecified, w/ anxious distress secondary; unspecified personality [disorder]." AR 298.  She found that plaintiff was not significantly limited in carrying out very short and simple instructions, was able to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision and make simple work-related decisions.  AR 296.  Dr. Jennings also found that plaintiff  was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and that she could perform at a consistent pace without an unreasonable number and length of rest periods.  In Dr. Jennings's opinion, plaintiff would perform better in jobs that did not require extended periods of time around other people and that "periodic exacerbations of [mental health symptoms might] impact [plaintiff's ]ability to perform at a consistent pace." AR 296-97.

Dr. John J. Warren, Ed.D., conducted an assessment of plaintiff's residual functional capacity in December 9, 2015.  AR 332.  It was his opinion that plaintiff was not significantly limited in remembering locations and work-like procedures or in understanding and remembering very short and simple instructions and that she was moderately limited in understanding and remembering detailed instructions and in performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances. AR 333-34.  He concluded that plaintiff could ask simple questions or request assistance without significant limitations, but was moderately limited in getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  AR 334.

10

The administrative law judge found that the people who worked with plaintiff spoke of intermittent problems she experienced. These which varied from anxious, depressed or euthymic (a stable mental state or mood), to constricted, flat or blunted. AR 223. However, her mental status examination were "mostly unremarkable with regards to appearance, speech, thought content, thought process, cognition psychomotor behavior, insight, and judgment." Dkt. #11, at 8. Her symptoms fluctuated but her episodes of increased symptoms were "temporary and correspond[ed] to times of significant life stressors." AR 223.

OPINION

According to plaintiff, the administrative law judge erred in two respects in reaching a conclusion of non-disability. First, she understated the nature and extent of plaintiff's mental impairments and erroneously found no support in the record for plaintiff's statements about her condition. Second, the administrative law judge discounted all of the opinions of record relating to plaintiff and instead, "played doctor," reaching her own conclusions about plaintiff's condition, not giving the proper weight to the opinions of the state agency psychologists and failing to give sufficient weight to the opinions of social worker, Amanda Kalisz, and plaintiff's treating psychiatrist, Dr. James Lean.

A. Understating the Nature and Extent of Plaintiff's Mental Symptoms

The administrative law judge found that plaintiff exhibited symptoms of anxiety, low

self esteem, poor sleep and decreased motivation that would be consistent with diagnoses of major depressive disorder, post traumatic stress disorder and generalized anxiety disorder. However, she was not persuaded that plaintiff's mental status examinations supported a finding that her symptoms were disabling.  AR 223.  The administrative law judge did not deny that plaintiff displayed "intermittent abnormalities in either an anxious, depressed or euthymic  mood, and constricted flat or blunted affect," id., but identified more than 80 citations in the record to mental status examinations of plaintiff that in her opinion were "mostly unremarkable with respect to appearance, speech, thought content, thought process, cognition, psychomotor behavior, insight, and judgment."  Id.

Plaintiff contends that the administrative law judge "cherry-picked" the "unremarkable" reports, omitting those in which plaintiff reported problems, but she has not identified any reports that support this contention.  Many of the reports cited by the administrative law judge refer to problems that plaintiff was experiencing.  Many of these problems were significant, but plaintiff has not shown that any of them support a conclusion that plaintiff could not engage in significant, gainful work activity.  This may be due to the care plaintiff has received, as well as to the significant efforts she herself has made to overcome her psychiatric  problems.

During the period in question (2012-17), plaintiff saw a psychiatrist on a regular basis for both individual counseling and medication monitoring.  She also had psychotherapy sessions with a licensed clinical social worker, Amanda Kalisz, which, as the administrative law judge observed, "encourag[ed] positive, realistic, and empowering self-talk."  AR 223.

12

The administrative law judge recognized that "plaintiff's psychological symptoms fluctuate in severity," but found that these periods were temporary and "correspond[ed] to times of significant life stressors." Id. She also found that "[plaintiff's] symptoms never reached nor maintained a level of disabling and [plaintiff] never pursued more aggressive treatments options." AR 224. Plaintiff has not shown that these findings are either erroneous or incomplete.

## B. Alleged Discounting of Mental Opinions

Plaintiff contends that the nature and extent of her mental symptoms were downplayed and that the administrative law judge discounted and compounded the problem by "playing doctor" and reaching her own conclusions about plaintiff's condition. She adds that the administrative law judge failed to include in her determination of plaintiff's residual functional capacity all of the moderate limitations that the agency doctors identified and also failed to give sufficient weight to the opinions of plaintiff's treating psychiatrist and therapist.

## 1. " Playing doctor"

The administrative law judge found that plaintiff had symptoms of anxiety, low self-esteem, poor sleep and decreased motivation, which are "consistent with a diagnosis of major depressive disorder, post-traumatic stress disorder and generalized anxiety disorder." AR 223. However, she did not find plaintiff's allegations regarding the limiting effects of her

condition to be consistent with either her mental status examinations, which did not document any gross cognitive deficiencies, or with the results of plaintiff's Continuous Performance Test in April 2016. That test indicated that plaintiff had no apparent problems with impulsivity, in focusing her attention or in sustaining that focus. Id. The administrative law judge also noted that plaintiff did not spend as much time in psychiatric counseling as it might appear from the record because her sessions with her psychiatrist included both individual counseling and medication monitoring, and her frequent psychotherapy sessions with Amanda Kalisz were devoted to many topics, not just to her psychological symptoms. Id.

It is true that there have been times when plaintiff could not control her anxiety, depression, low self esteem and decreased motivation. AR 223. For instance, before March 2015, she had reported feeling so much better that she discontinued seeing a counselor regularly, only to find herself going to the emergency room several weeks later, with thoughts of self-harm. AR 794. A few hours after her visit, however, she was discharged after she said she no longer had those thoughts and wanted to go home. Id.

Following the birth of her son in February 2017, plaintiff experienced depression, but felt better as soon as she went back on her medication. AR 1328. In July 2017, she had nightmares, intrusive thoughts and an exacerbation of post traumatic stress disorder, AR 1424-25, but her mental status was within normal limits. AR 1424.

In August 2017, plaintiff had interactions with both the Juneau County Sheriff's Department and a crisis worker, but she was not admitted to the hospital. Despite having

thoughts of self-harm, she was able to talk with the sheriff at her home and to go with him to meet the crisis worker.  AR 1435.

In September 2017, plaintiff told her psychiatrist that her obstetrician had started her on Zoloft, which had improved her sleep and her concentration, and that another practitioner had started her back on Wellbutrin and Lexapro.  Still another practitioner cut the Wellbutrin in half, which led to an increase in plaintiff's anxiety, but it was increased again when plaintiff became more suicidal.  AR 1453.  She talked with her therapist, Amanda Kalisz, about how her anxiety had progressed over the preceding few years and what steps she might take to relieve it and release her anxious energy.  AR 1466.  At that session, Kalisz found plaintiff's speech shaky and noted that she was having to take deep breaths between words.  Id.  However, Kalisz assessed plaintiff's thought process as within normal limits; in her opinion, plaintiff was not having suicidal, homicidal or paranoid ideation but did have limited judgment and insight.  Id.

In March 2018, Dr. Lean saw plaintiff for medication management.  AR 1497.  He observed that she was less agitated and less frustrated after starting Lamictal .  He noted that she had called a month earlier to complain about depression and her Lamotrigine had been increased.  Id.  Dr. Lean saw plaintiff again in June 2018.  She told him that her depression, nightmares and anxiety had been worse and that she had 3-4 nightmares a week, but she also was less agitated, less frustrated, more laid back and more ambitious since starting the Lamictal.  AR 11.

After reviewing the record and the parties's arguments, I conclude that plaintiff has

failed to show that the administrative law judge "played doctor" in finding that plaintiff was capable of performing work at a medium level, carrying out simple and routine tasks in a low stress work environment with infrequent changes in work routine, having only occasional interaction with coworkers and supervisors and no more than incidental interaction with the public. The record contains sufficient evidence to support the administrative law judge's conclusion that plaintiff is capable of working at the level and within the limits specified in administrative law judge's decision. That is, a "reasonable person would accept it as adequate to support a conclusion." Scheck v. Barnhart, 357 F.3d 697, 699 (7th Cir. 2004). The administrative law judge explained her decision "in such a way that allows [the court]) to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." McKinzey v. Astrue, 641 F.3d 884, 890 (7th Cir. 2011).

2. The administrative law judge's alleged failure to give proper weight to the opinions of the state agency psychologists

In determining plaintiff's mental residual functional capacity, the administrative law judge took into account the opinions of the two state agency psychologists, Dr. Jennings and Dr. Warren, each of whom had completed an assessment of plaintiff's mental functional abilities and limitations in the workplace. From her reading of Dr. Jennings's September 2015 report, the administrative law judge concluded that when plaintiff was compliant with her treatment,

16

> her mental condition never deteriorated to the point of disabling, as evidence[d] by her overall generally intact mental status examinations since her alleged onset date and failure to pursue more aggressive treatment, when recommended during acute periods of distress related to temporary life stressors.

AR 227. The administrative law judge concluded also that plaintiff retained the ability to perform unskilled work: she could understand and remember a three-step command involving simple instructions; focus to complete tasks requiring three steps; would perform better in jobs not requiring extended periods of time among other people or extended public contact; and would be suitable for work that did not require changing tasks from day-to-day.

Plaintiff contends that the administrative law judge's analysis omitted Dr. Jennings's observation in section 1 of the mental residual functional capacity form that "[p]eriodic exacerbations of [mental health] [symptoms] may impact [claimant's] ability to perform at a consistent pace." AR 297.  The administrative law judge does not deny that she gave that observation no weight but says that the section 1 portion "is merely a worksheet," and "does not constitute the RFC assessment."   Program Operations Manual System DI 24510.010(B)(1). Instead, the psychologist is supposed to record the mental RFC determination in the narrative part of the Mental Residual Functional Capacity Assessment. Varga v. Colvin, 794 F.3d 809, 816 (7th Cir. 2015) (holding that an administrative law judge may rely on a doctor's narrative residual functional capacity determination if narrative "adequately encapsulates and translates those worksheet observations.")

Dr. Warren undertook a review of the record on reconsideration in December 2015. He concluded that plaintiff was significantly limited in nine areas, moderately limited in nine

others and markedly limited in the areas of carrying out detailed instructions and interacting appropriately with the general public.  He thought that plaintiff could

- understand and remember instructions of varying degrees of complexity and detail;

- sustain the mental demands associated with carrying out simple tasks over the course of a routine workday and workweek within acceptable attention, persistence and pace tolerances;

- sustain the basic demands associated with relating adequately with supervisors and coworkers, but would be unable to interact appropriately with the general public; and

- adapt to routine workplace changes.

The administrative law judge did not adopt all of these opinions, but she found them consistent with a finding that plaintiff could perform unskilled work with limited social interaction and limited changes in work routine.  Although plaintiff criticizes that interpretation of the record, she has not shown that it is inaccurate.  Plaintiff says that she stopped working during "the later period of time," but does not say when that was.

As the administrative law judge observed, plaintiff's mental status examinations did not "document any gross cognitive deficiencies," AR 223, and were "mostly unremarkable with regards to appearance, speech, thought content, thought process, cognition, psychomotor behavior, insight, and judgment." Id.  Moreover, plaintiff's results were on the normal range on her April 2015 Continuous Performance Test and plaintiff's overall mental health treatment was relatively conservative and "not consistent with the severity of her symptoms." Id.


3. The administrative law judge failed to give sufficient weight to the opinions of Amanda

18

<u>Kalisz and treating psychiatrist, James Lean</u>

The administrative law judge explained that she gave little weight to the opinions of licensed social worker, Amanda Kalisz, who had found that plaintiff was incapable of even low stress work, as well as extremely limited in the activities of daily living, social functioning and maintaining concentration, persistence and pace and getting along with coworkers or peers. The administrative law judge explained that, as a licensed clinical social worker, Kalisz was not an acceptable medical source. She pointed out that Kalisz's own records of her treatment of plaintiff "demonstrate generally normal mental status on examination with intact cognition despite subjective reports of psychological disturbances." AR 228.

The administrative law judge also discounted Dr. Lean's opinion that plaintiff was capable of low stress jobs, but "markedly limited in activities of daily living, social functioning, and maintaining concentration, persistence and pace" and unable to complete a full workday. She explained that the doctor was not trained in the rules and regulations of Social Security Disability, which was shown by his finding that plaintiff had "a current history of more than a year of inability to function outside a highly supportive living environment. AR 228. As the administrative law judge pointed out, this finding made no sense, when plaintiff had been caring for her children since her alleged onset date. AR 228. For the same reason, she disagreed with the statement of both Kalisz and Lean that plaintiff had had four or more episodes of decompensation within a 12-month period, each of two weeks' duration.

Plaintiff discussed her mental condition on numerous occasions with her psychiatrists, her psychologist, her social worker and others, as documented in the record. She says now

19

that the administrative law judge glossed over significant adverse findings regarding her mental impairments, such as those having to do with her "significant periods of waxing and waning symptoms which impacted her ability to sustain full-time work," dkt. #12, at 2, and that this led to the administrative law judge's erroneous conclusion that plaintiff's mental impairments were only moderate in degree.

Although the record reveals instances in which plaintiff's mental state changed for the worse and did so dramatically, it reveals many more instances in which plaintiff managed the care of her two young children and other challenges appropriately. In addition, plaintiff has not shown that the administrative law judge's minor discounting of the opinions of the state agency psychologists' assessments of plaintiff's mental condition was not supported by any substantial evidence. Finally, plaintiff says that the administrative law judge erred in not relying on any medical opinions concerning plaintiff's mental impairments, but this assertion is belied by the administrative law judge's explanations for the conclusions she reached.

In summary, the record does not support a finding that the administrative law judge understated the nature of plaintiff's mental impairments, that she erred in finding a lack of support for some of plaintiff's statements about her condition or that she was mistaken when she concluded that plaintiff does not have a disability that entitles her to benefits under the Social Security Act. Accordingly, judgment will be entered for defendant Commissioner of Social Security.


CONCLUSION

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Jennifer L. Chambers's appeal is DISMISSED.

Entered this 27th day of July, 2020.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

.